IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODNEY ALTON BRYANT,

  Petitioner,                          No. CIV S-09-CV-3462 GEB CHS P

  vs.

JOHN W. HAVILAND, et al.,

  Respondent.              FINDINGS AND RECOMMENDATIONS

_____/

## I.  INTRODUCTION

Petitioner, Rodney Alton Bryant, is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an indeterminate sentence of fifteen years to life following his 1990 guilty plea in Sacramento County Superior Court to second degree murder.  Here, Petitioner does not challenge the constitutionality of that conviction, but rather, the execution of his sentence, and specifically, the April 9, 2009 decision by the Board of Parole Hearings finding him unsuitable for parole.

## II.  ISSUES PRESENTED

Petitioner alleges two grounds for relief in his pending petition.  Specifically, Petitioner's claims are as follows:

(1)    The Board's three year denial of parole based on the

1
2

      application of Marsy's Law violated Petitioner's rights under the ex post facto, due process, and equal protection clauses, and  subjects Petitioner to cruel and unusual punishment.

3
4

    (2)     The Board denied Petitioner's right to due process of law by requiring him to discuss the commitment offense in order to obtain a parole release date.

5      After careful consideration of the record and applicable law, it is recommended that

6  this petition for writ of habeas corpus relief be denied.

7
## III. FACTUAL BACKGROUND

8      The basic facts of Petitioner's life crime were summarized by the Presiding

9  Commissioner at Petitioner's parole hearing as follows:

10
11
12
13
14
15
16
17
18

    On August 12th, 1990, Rodney Bryant . . . went fishing with his brother, Sean Bryant, Antonio Tavares . . . and Tavares' daughter and and Bryant's girlfriend's eight-year old son . . . . The victim cruised by the fishing party in his motorized rubber boat and snagged a fishing pole, pulling it into the river.  When the victim came back, Tavares fired a shotgun round into the air to stop the victim.  The victim started to leave when Tavares fired another shotgun round. Rodney Bryant fired at least one rifle shot.  Police investigation conclude[d] the victim was hit in the back by a .22 caliber cartridge fired by Bryant.  After the victim called out for help, the fishing party gathered their equipment and left the scene.  A fisherman observed the victim's boat going in circles in the middle of the slough.  The property caretaker and another individual eventually pulled the partially deflated boat to the shore.  The victim was found dead when the officers arrived.  Tavares was arrested at his residence after an incomplete 911 call was traced to his home.  Bryant was taken into custody August 13th, 1990.

19    The prisoner's version:

20
21
22
23
24
25
26

    Bryant states they brought the guns with them because they had seen snakes in the area.  The victim had snagged Tavares' pole.  Tavares wanted to go after the victim with a shotgun but Bryant told him the slough was a dead end and he would have to return.  When the victim returned, Tavares fired a shotgun into the air.  Bryant stated he fired a rifle into the water, however, his view of the victim was obstructed by bushes along the bank.  Upon hearing the victim's cry for help, Bryant suggested they go to the caretaker's house and look for help. Tavares refused, ordering the others to pack up.  Bryant drove Tavares' truck to Tavares' house.  Bryant admits culpability and is remorseful.  He feels he was not allowed a fair deal due to the witnesses' stories.  He stated the witnesses had not been truthful with the investigators.  He pled guilty to second degree murder on advice

1    of his lawyer.

2    (Pet. at 54-56.)  Petitioner was sentenced to fifteen years to life in prison, and his minimum eligible

3    parole date passed on February 21, 2001.  On April 9, 2009, Petitioner appeared before the Board

4    of Parole Hearings (the "Board") for his third subsequent parole consideration hearing.  After

5    considering various positive and negative suitability factors, the panel concluded that Petitioner

6    would pose an unreasonable risk of danger to society if released, and concluded that he was not

7    suitable for parole.  Petitioner sought habeas corpus relief from the Board's determination in the

8    Sacramento County Superior Court.  On August 24, 2009, the court denied his petition in a reasoned

9    decision, finding that both of Petitioner's claims were without merit.  The California Court of

10   Appeal, First Appellate District, and the California Supreme Court denied relief without comment.

11   Petitioner filed this federal petition for writ of habeas corpus on December 15, 2009.  Respondent

12   filed an answer on March 12, 2010, and Petitioner filed his traverse on March 30, 2010.

13                    **IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW**

14              This case is governed by the provisions of the Antiterrorism and Effective Death

15   Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after

16   its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

17   F.3d 1484, 1499 (9th Cir. 1997).  Under AEDPA, an application for a writ of habeas corpus by a

18   person in custody under a judgment of a state court may be granted only for violations of the

19   Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362,

20   375 n. 7 (2000).  Federal *habeas corpus* relief is not available for any claim decided on the merits

21   in state court proceedings unless the state court's adjudication of the claim:

22              (1)    resulted in a decision that was contrary to, or involved an
                      unreasonable application of, clearly established federal law,
23                    as determined by the Supreme Court of the United States; or

24              (2)    resulted in a decision that was based on an unreasonable
                      determination of the facts in light of the evidence presented
25                    in the State court proceeding.

26   28 U.S.C. § 2254(d).  *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*,

3

1  529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).  This court

2  looks to the last reasoned state court decision in determining whether the law applied to a particular

3  claim by the state courts was contrary to the law set forth in the cases of the United States Supreme

4  Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d

5  911, 918 (9th Cir. 2002).

## V.  DISCUSSION

6

7  **A.     Marsy's Law**

8          Petitioner claims that his rights under the Ex Post Facto Clause were violated when

9  the Board issued a three year denial of parole, pursuant to Marsy's Law, which was passed and

10  implemented after Petitioner was convicted.  In addition, Petitioner contends that application of

11  Marsy's law in his case violates his right to be free from cruel and unusual punishment, as well as

12  his rights to due process and equal protection.  According to Petitioner, application of Marsy's law

13  in his case increases the punishment for his commitment offense and decreases the likelihood that

14  he will ever be granted a parole release date.  Petitioner argues that Marsy's Law is inapplicable to

15  him and that future parole hearings must be held pursuant to the law in effect at the time the

16  commitment offense occurred.

17          At the time Petitioner was convicted, an inmate deemed unsuitable for parole was

18  entitled to annual subsequent parole suitability hearings. CAL. PENAL CODE § 3041.5(b)(2) (1990).

19  If the Board determined that it was not reasonable to expect that the inmate would be deemed

20  suitable for parole within the year, the hearing could be deferred for two years if the Board stated

21  the bases for so finding.  *Id.*  The Board could defer a parole suitability hearing for three years in

22  cases where an inmate was convicted of more than one offense involving the taking of a life if the

23  Board determined that it was not reasonable to expect the inmate would be deemed suitable within

24  the following years and stated the bases for so finding.  *Id*.  Thus, at the time of his conviction,

25  Petitioner, who stands convicted of a single murder, was entitled to either annual or biennial parole

26  suitability hearings.

1   The law governing the frequency of parole suitability hearings has changed multiple

2   times since Petitioner was convicted.  Immediately prior to the enactment of Marsy's Law, inmates

3   deemed unsuitable for parole were entitled to annual parole suitability hearings, unless the Board

4   found it unreasonable to expect that parole would be granted at a hearing during the following year,

5   in which case a subsequent suitability hearing could be deferred for two years if the Board stated

6   its bases for so finding.  CAL. PENAL § 3041.5(b)(2) (2008).  Any inmate convicted of murder could

7   be denied parole for a period of up to five years if the Board found it unreasonable to expect that

8   parole would be granted during the following years and stated the bases for so finding in writing.

9   *Id*.

10   On November 4, 2008, California voters passed Proposition 9, the "Victims' Bill of

11   Rights Act of 2008: Marsy's Law," which, *inter alia*, altered the frequency of parole suitability

12   hearings for prisoners found unsuitable for parole.  Marsy's Law, which effected significant changes

13   in the law governing frequency of parole hearings, was codified in section 3041.5(b)(3) of the

14   California Penal Code as follows:

15   The Board shall schedule the next hearing, after considering the
views and interests of the victim, as follows:

16

17   (A)   Fifteen years after any hearing at which parole is denied,
unless the board finds by clear and convincing evidence that
the criteria relevant to the setting of parole release dates
18   enumerated in subdivision (a) of Section 3041 are such that
consideration of the public and victim's safety does not
19   require a more lengthy period of incarceration for the prisoner
than 10 additional years.

20

21   (B)   Ten years after any hearing at which parole is denied, unless
the board finds by clear and convincing evidence that the
criteria relevant to the setting of parole release dates
22   enumerated in subdivision (a) of Section 3041 are such that
consideration of the public and victim's safety does not
23   require a more lengthy period of incarceration for the prisoner
than seven additional years.

24

25   (C)   Three years, five years, or seven years after any hearing at
which parole is denied, because the criteria relevant to the
setting of parole release dates enumerated in subdivision (a)
26   of Section 3041 are such that consideration of the public and

5

1
2
3

> victim's safety requires a more lengthy period of incarceration for the prisoner, but does not require a more lengthy period of incarceration for the prisoner than seven additional years.

CAL. PENAL CODE § 3041.5(b)(3) (2010).  The Ninth Circuit Court of Appeals recently detailed the

4

significant changes accomplished by the adoption of Marcy's Law as follows:

5
6
7
8
9
10
11
12

> . . . the minimum deferral period is increased from one year to three years, the maximum deferral period is increased from five years to fifteen years. [Cal. Penal Code § 3041.5(b)(3) (2010).] Further, the burden to impose a deferral period other than the default period increased.  Before Proposition 9 was enacted, the deferral period was one year unless the Board found it was *unreasonable* to expect the prisoner would become suitable for parole within one year.  Cal. Penal Code § 3040.5(b)(2) (2008).  After Proposition 9, the deferral period is fifteen years unless the Board finds by *clear and convincing* evidence that the prisoner will be suitable for parole in ten years, in which case the deferral period is ten years.  Cal. Penal § 3041.5(b)(3)(A)-(B) (2010).  If the Board finds by clear and convincing evidence that the prisoner will be suitable for parole in seven years, the Board has the discretion to set a three-, five-, or seven-year deferral period.  *Id*. § 3041.5(b)(B)-(C).

13
14
15
16
17
18
19
20
21

> Proposition 9 also amended the law governing parole deferral periods by authorizing the Board to advance a hearing date.  The Board may exercise its discretion to hold an advance hearing *sua sponte* or at the request of a prisoner.  "The board may in its discretion . . . advance a hearing . . . to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner . . . ."  *Id*. § 3041.5(b)(4).  Also, a prisoner may request an advance hearing by submitting a written request that "set[s] forth the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration."  *Id*. § 3041.5(d)(1).  A prisoner is limited to one such request every three years.  *Id*. § 3041.5(d)(3).  Although the minimum deferral period is three years, there is *no* minimum period the Board must wait before it holds an advance hearing.  *See id*. § 3041.5(b)(4).

22
23

*Gilman v. Schwarzenegger*, No.10-15471, slip op. at 5-6 (9th Cir. Dec. 6, 2010) (emphasis in

24

original).

25

Petitioner's various constitutional challenges to Marsy's Law are problematic

because they seek relief as to the future scheduling of Petitioner's next parole suitability hearing.

26

1    A prisoner's claim "for future relief (which, if successful, will not necessarily imply the invalidity

2    of confinement or shorten its duration)" is very distant from the core purpose of habeas corpus relief.

3    *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).  In fact, habeas corpus relief is not generally available

4    unless a petitioner's claim implicates the fact or duration of confinement, as the purpose of the writ

5    is to obtain release from present or future unlawful custody.  *Preiser v. Rodrigues*, 411 U.S. 475,

6    485-86 (1973).  Consequently, the United States Supreme Court has found that where prisoners

7    sought the invalidation of state procedures used to deny parole suitability or eligibility, their claims

8    were cognizable under 42 U.S.C. § 1983.  *Wilkinson*, 544 U.S. at 82 (2005).  *See also Nelson v.*

9    *Campbell*, 541 U.S. 637, 643 (2004) ("constitutional claims that merely challenge the conditions of

10   a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside [the

11   core of habeas corpus relief] . . . . " (internal citation omitted)); *Muhammad v. Close*, 540 U.S. 749,

12   750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration

13   are the province of habeas corpus . . . [whereas] requests for relief turning on the circumstances of

14   confinement may be presented in a § 1983 action." (internal citation omitted)).    Although

15   Petitioner's ultimate goal is a speedier release on parole, the immediate relief available in the context

16   of Petitioner's current claim is to prevent the Board from applying Marsy's Law in his case, thus

17   providing him a speedier opportunity to attempt to convince the Board that he should be deemed

18   suitable for parole.  This claim is too remote from any past finding of the Board regarding

19   Petitioner's parole suitability to be cognizable for habeas corpus relief.  Thus, it is only in the

20   context of 42 U.S.C. § 1983 that Petitioner, as a plaintiff, may challenge the constitutionality of

21   Marsy's Law.

22        Further complications arise with regard to Petitioner's Ex Post Facto challenge to the

23   Board's application of Marsy's Law to his case because a class action is currently pending under 42

24   U.S.C. § 1983 with respect to the Ex Post Facto Clause and Marsy's Law.  The class action, *Gilman*

25

26

1     *v. Schwarzenegger*,[1] CIV-S-05-0830 LKK GGH, is proceeding on behalf of prisoners convicted of

2     murder and serving a sentence of life with the possibility of parole with at least one parole denial,

3     and challenges the state procedures denying class members parole as well as their deferred parole

4     suitability hearings  following a finding of parole unsuitability.  The Ninth Circuit has affirmed the

5     District Court's order certifying the class.  *See Gilman v. Schwarzenegger*, 382 Fed.Appx. 544 (9th

6     Cir. 2010).  It appears that Petitioner, who stands convicted of murder and has been denied parole

7     four times,[2] is a member of the class.  As another judge in this district has explained,

> Maintaining the future aspects of the [Board's] decision into this
> habeas petition creates logistical difficulties.  For example, should
> this court decline to find that Marsy's Law is ex post facto, does
> petitioner remain a member of the *Gilman* class?  Does he get a
> second bite at the apple?  Conversely, should the *Gilman* class
> members not acquire relief, can petitioner still seek relief here[?]
> These problems highlight the policy not to permit a class member to
> seek injunctive relief applicable to the class outside of the class
> action.  A plaintiff who is a member of a class action for equitable
> relief from prison conditions may not maintain a separate, individual
> suit for equitable relief involving the same subject matter of the class
> action.  *See Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979);
> *see also McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991)
> ("Individual suits for injunctive and equitable relief from alleged
> unconstitutional prison conditions cannot be brought where there is
> an existing class action."); *Gillespie v. Crawford*, 858 F.2d 1101, 1103
> (5th Cir. 1988) ("To allow individual suits would interfere with the
> orderly administration of the class action and risk inconsistent
> adjudications.").

18     *Rodgers v. Swarthout*, 2010 WL 3341852 (E.D.Cal. 2010).   In addition to these concerns,

19     "increasing calendar congestion in the federal courts makes it imperative to avoid concurrent

20     litigation in more than one forum whenever consistent with the rights of the parties."  *Crawford v.*

21     *Bell*, 599 F.2d 890, 893 (9th Cir. 1979).  Accordingly, "[a] court may choose not to exercise its

22     jurisdiction when another court having jurisdiction over the same matter has entertained it and can

---

[1] The class action has also been referred to using the case names *Gilman v. Davis* and *Gilman v. Fisher*, but all three case names refer to the same civil case docketed as CIV-S-05-0830 LKK GGH.

[2] The record reflects that Petitioner was denied parole at his initial parole suitability hearing and that the results of the 2009 hearing currently at issue was his third subsequent (fourth overall) hearing.

1  achieve the same result." *Id.* Thus, if Petitioner wishes to seek relief regarding his Ex Post Facto

2  Claim as it relates to Marsy's Law outside of the class action, he may request to opt out of the class

3  action and attempt to seek relief under section 1983. *McReynolds v. Richards-Cantave*, 588 F.3d

4  790 (2d Cir. 2009). *See also Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989, 993 (5th Cir.

5  1981) ("[A]lthough a member of a class certified under [Federal Rule of Civil Procedure] 23(b) has

6  no absolute right to opt out of the class, a district court may mandate such a right pursuant to its

7  discretionary power under Rule 23.").

8          To the extent Petitioner challenges the Board's 2009 determination that he was

9  unsuitable for parole, this will be discussed in the context of his second claim, below.

10 **B.      Due Process in the California Parole Context**

11         Petitioner claims that the Board's 2009 determination that he was unsuitable for

12 parole violated his federal right to due process of law.  In support of this claim, Petitioner alleges

13 that the Board's decision was not supported by some evidence in the record that he remained a

14 current danger to public safety.  Moreover, Petitioner contends the Board violated section 5011(b)

15 of the California Penal Code, which prohibits the Board from requiring an inmate to admit guilt in

16 order to be deemed suitable for parole.[1]

17         The Due Process Clause of the Fourteenth Amendment to the United States

18 Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due

19 process of law." U.S. CONST. AMEND. XIV, § 2.  A person alleging a due process violation must first

20 demonstrate that he or she was deprived of a protected liberty or property interest, and then show

21

22

23

24

25

26

---

[1] Petitioner also claims that former Commissioner John Gillis told him that he must discuss the commitment offense in order to be found suitable for parole, and that if he continued to refuse to discuss the offense, he would never be found suitable.  Commissioner Gillis was not present at Petitioner's April 9, 2009 parole suitability hearing, the hearing being challenged by Petitioner's current federal petition for writ of habeas corpus.  Moreover, a review of the transcript of Petitioner's hearing reveals that no such statement was made to Petitioner on the record, and Petitioner does not direct the court to any place in the record to support this allegation. Further, even assuming that the alleged statement was made to Petitioner at a previous parole suitability hearing, it would be irrelevant to Petitioner's current petition, which specifically challenges his April 9, 2009 hearing.

1   that the procedures attendant upon the deprivation were not constitutionally sufficient. *Ky. Dep't.*

2   *Of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th

3   Cir. 2002).

4              A protected liberty interest may arise from either the Due Process Clause itself or

5   from state laws. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).   In the context of parole,

6              [t]here is no right under the Federal Constitution to be conditionally
                 released before the expiration of a valid sentence, and the States are
7              under no duty to offer parole to their prisoners. [ ].  When, however,
                 a State creates a liberty interest, the Due Process Clause requires fair
8              procedures for its vindication – and federal courts will review the
                 application of those constitutionally required procedures.

9
      *Swarthout v. Cooke*, slip. op. at 4 (U.S. January 24, 2011).  *See also Greenholtz v. Inmates of Neb.*
10
      *Penal*, 442 U.S. 1, 7 (1979) ("There is "no constitutional or inherent right of a convicted person to
11
      be conditionally released before the expiration of a valid sentence.").   Here, because California's
12
      statutory scheme governing parole "uses mandatory language, [it] 'creates a presumption that parole
13
      release will be granted' when or unless certain designated findings are made, thereby giving rise to
14
      a constitutionally protected liberty interest." *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz*, 442
15
      U.S. at 12). *See also Swarthout*, slip op. at 4 ("[T]he Ninth Circuit held that California law creates
16
      a liberty interest in parole . . . .  While we have no need to review that holding here, it is a reasonable
17
      application of our cases." (internal citations omitted)).
18
                 Despite the existence of this liberty interest, it is well established that inmates are not
19
      guaranteed the "full panoply of rights" during a parole suitability hearing as are normally afforded
20
      to criminal defendants under the Due Process Clause. *Swarthout*, slip op. at 4 ("In the context of
21
      parole, we have held that the procedures required are minimal.").  *See also Pedro v. Or. Parole Bd.*,
22
      825 F.2d 1396, 1398-99 (9th Cir. 1987).   The United States Supreme Court has held that the
23
      protection afforded by the federal due process clause to California parole decisions consists solely
24
      of the "minimal" procedural requirements set forth in *Greenholtz*, specifically, "an opportunity to
25
      be heard and . . . a statement of the reasons why parole was denied." *Id*. at 4-5.  *See also Greenholtz*,
26

1   442 U.S. at 16.

2          In addition, as a matter of state constitutional law, denial of parole to California

3   inmates must be supported by "some evidence" demonstrating that the inmate poses an unreasonable

4   risk of danger to society. *Hayward v. Marshall*, 603 F.3d 546, at 562 (citing *In re Rosenkrantz*, 29

5   Cal.4th 616 (2002)). *See also In re Lawrence*, 44 Cal.4th at 1191 (recognizing the denial of parole

6   must be supported by "some evidence" that an inmate "poses a current risk to public safety"); *In re*

7   *Shaputis*, 44 Cal.4th 1241, 1254 (2008) (same).    However, California's "some evidence"

8   requirement is a substantive right provided by the state of California, and thus is not afforded

9   protection by the federal due process clause. *Swarthout*, slip op. at 5.  Indeed, the Supreme Court

10  has held that "[n]o opinion of [theirs] supports converting California's 'some evidence' requirement

11  into a substantive federal requirement." *Id*.  Moreover, the Supreme Court has long recognized that

12  alleged violations of state law are not cognizable on federal habeas corpus review. *Id*. at 6; *Estelle*

13  *v. McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas

14  court to reexamine state court determinations on state law questions"); *Smith v. Phillips*, 455 U.S.

15  209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions

16  obtained in violation of the United States Constitution.").

17          Here, the record reflects that Petitioner was present at his 2009 parole suitability

18  hearing, that he participated in the hearing, and that he was provided with the reasons for the

19  Board's decision to deny parole.  The federal due process clause requires no more.  Moreover, to

20  the extent that Petitioner's claim rests on his allegation that the Board failed to follow California

21  state law or procedure, it is not cognizable in a federal petition for writ of habeas. *Middleton v.*

22  *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1986); (*Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir.

23  1986).  As discussed above, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on

24  the basis of some transgression of federal law binding on the state courts. *Middleton*, 768 F.2d at

25  1085; *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  Petitioner has received all process

26  he was due and is thus not entitled to federal habeas corpus relief on his claim that the Board's

11

1 | unsuitability determination violated his federal right to due process of law.

2 | ### VI.  CONCLUSION

3 | Accordingly, IT IS RECOMMENDED that:

4 | (1) Petitioner's claims that Marsy's Law violates the federal due process, equal protection, and cruel and unusual punishment clauses be dismissed without prejudice, as a petition for writ of habeas corpus is the improper vehicle by which to pursue these claims; and

(2) Petitioner's claim that Marsy's Law violates the Ex Post Facto Clause be dismissed as duplicative of a claim currently pending in the class action *Gilman v. Shwarzenegger*, CIV-S-05-0830 LKK GGH.

(3) Petitioner's petition for writ of *habeas corpus* with respect to his challenge to the Board's determination that he was unsuitable for parole be denied; and

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).   In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: February 4, 2011

*Charlene H. Sorrentino*

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE